UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States of America,                    CR-02-1327(CPS)

    - against -
                                             MEMORANDUM
Raymond Ravello, also known as               OPINION AND
    "Boscana Orlando," "Edwin Salas,"        ORDER
    "Edwin Colon," "Junito,"
    "Junito Salas," "Edwin Martinez,"
    and "Edgar Martinez,"

                    Defendant.
----------------------------------------X
SIFTON, Senior Judge.

        Raymond Ravello ("defendant"), who is also known as Bascana

Orlando, pleaded guilty on July 25, 2003, to conspiracy to

distribute and possession with intent to distribute heroin, in

violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.  On February 11,

2004, defendant was sentenced to a term of imprisonment of 72

months, to run concurrently with the unexecuted portion of a

state sentence defendant was serving.  Defendant believes that

the Federal Bureau of Prisons ("BOP") has miscalculated the

amount of credit he should receive for time spent in custody

prior to imposition of his federal sentence.  Now before this

Court is defendant's motion to correct this calculation.  For the

reasons set forth below, defendant's motion is denied.


                            **Background**

        On September 9, 1993, defendant, under the name Edwin Salas,

was arrested for the Attempted Criminal Sale of a Controlled

Substance in the Third Degree, in violation of New York state law

("1993 Controlled Substance Offense"). He pleaded guilty on September 30, 1993, but did not come to further court appearances and a bench warrant was issued for his arrest on November 22, 1993. Although defendant, under a variety of aliases, was arrested on several occasions and convicted of a number of offenses between November 1993 and 2002, as discussed below,[1] it does not appear that the bench warrant was discovered until 2002, for unknown reasons. Therefore, defendant was not sentenced until April 30, 2003, at which time a sentence of two to six years was imposed.

On March 3, 1995, defendant, using the name Edgar Martinez, was arrested for Criminal Possession of Stolen Property in the Third Degree ("1995 Criminal Possession Offense"). Again, defendant apparently did not appear at required court dates.

On October 5, 2002, defendant, using the name Boscana Orlando, was arrested for Criminal Misconduct: Intent to Damage Property ("2002 Criminal Misconduct Offense"). At this time, apparently, the bench warrant for the 1993 Controlled Substance Offense was discovered, and defendant was held for that violation as well. Defendant was also held on the 1995 Criminal Possession Offense.

On November 22, 2002, defendant was sentenced in State Court

---

[1]  I include only those arrests and convictions relevant to the instant matter.

to a term of imprisonment of one year for the 1995 Criminal

Possession Offense.  On December 2, 2002, defendant was again in

State Court sentenced to 120 days in custody for the 2002

Criminal Misconduct Offense.  Both of these sentences, however,

resulted in a sentence of time served and, on December 9, 2002,

defendant was transferred to federal custody pursuant to a writ

of habeas corpus *ad prosequendum* on the charges in the instant

federal case.[2]  Thereafter, he was produced in New York State

Supreme Court, Kings County, on April 30, 2003, for sentencing on

the 1993 Controlled Substance Offense and then returned to

federal custody pursuant to the original writ.

Following defendant's July 25, 2003 plea of guilty in the

instant case he was sentenced by the undersigned, on February 11,

2004, to a term of imprisonment of 72 months.  The sentence was

to run concurrently with the unexecuted portion of his state

sentence for the 1993 Controlled Substance Offense.

On April 12, 2004, the writ of habeas corpus *ad prosequendum*

was satisfied.  Defendant, however, was not returned to state

custody to serve the remainder of his state sentence for the 1993

Controlled Substance Offense until September 27, 2005.  Defendant

was given credit against the state sentence for two days he

served in 1993 following his arrest, the 65 days he served

---

[2]  The PSR states that defendant was arrested on the charges in the
present federal case on November 13, 2002.  As defendant appears to have been
in state custody at this time, it is unclear exactly what occurred on that
date, but the use of the term arrest is inappropriate.

between his arrest on October 5, 2002 and his entering federal custody on December 9, 2002, and the 1,052 days he served while in federal custody, for a total credit of 1,119 days.  B. Epstein, Apr. 21, 2008 Letter; Mar. 6, 2007, E. Felicien Letter (Docket #433, at 6).  On January 25, 2006, having presumably completed his state sentence, defendant was transferred back into federal custody.

The BOP has credited defendant with the period of his incarceration from his sentence in this Court on February 11, 2004, to date, but it has credited defendant with only 148 days of the time spent in custody prior to February 11, 2004.  This period of 148 days is apparently intended to encompass the period from December 9, 2002, when defendant was transferred to federal custody, and April 29, 2003, the day before defendant's state sentence was imposed.[3]  According to the BOP, based on this credit and credit for good time, defendant's projected release date is December 7, 2008.  Defendant argues he should have been released in December 2007.

Defendant wrote to the Court concerning his continued detention on May 7, 2007.  I held a status conference on October 10, 2007, and directed the government to contact the BOP, determine the BOP's basis for its calculation of defendant's

---

[3]  By the Court's calculation, December 3, 2002, rather than December 9, 2003, is 148 days before April 29, 2003.

projected release date, and provide a written status report to
the Court and defendant's counsel.  The government, on October
15, 2007, submitted a letter stating that the BOP determined its
projected release date based upon its conclusion that defendant
was entitled to 148 days of prior credit time and 282 days of
earned and projected good time credit.  The government also noted
that defendant's grievance had to be addressed pursuant to the
BOP's administrative remedy process.

On an unspecified date, defendant wrote to the Bureau of
Prison's Designation and Sentence Computation Center, stating his
belief that he had not received the proper credits towards the
service of his federal sentence.  Georgina Macias-Carson, an
Operations Manger, responded on January 22, 2008, that the Bureau
of Prisons had correctly credited defendant's prior time in
official detention toward the service of his federal sentence.

On March 3, 2008, defendant again wrote to the Court,
requesting that the Court intervene and correct the calculation
of credit defendant received for all time spent in state and
federal custody prior to imposition of sentence in this case.

## Discussion

"The Attorney General, through the BOP, possesses the sole
authority to make credit determinations pursuant to 18 U.S.C. §

3585(b)."[4] *United States v. Whaley*, 148 F.3d 205, 206 (2d Cir. 1998); *see also United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997) (BOP determines commencement of sentence, crediting, and location of confinement). A district court "do[es] not have the authority to order the BOP to either grant or deny credit or to disregard the BOP's calculation." *Whaley*, 148 F.3d at 206 (citing *United States v. Wilson*, 503 U.S. 329, 333, 117 L.Ed.2d 593, 112 S. Ct. 1351 (1992)). A prisoner may, however, seek judicial review of BOP determinations by means of a petition pursuant to 28 U.S.C. § 2241, but only if the prisoner has exhausted all available administrative remedies. *Id*. at 207 (citing *Wilson*, 503 U.S. at 335); *Pineyro*, 112 F.3d at 46. The exhaustion of administrative remedies is a jurisdictional requirement. *Whaley*, 148 F.3d at 207 (citing *Wilson*, 503 U.S. at 335).

The BOP has a three-tiered administrative remedy system with

---

[4] 18 U.S.C. § 3585(b) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
(1) as a result of the offense for which the sentence was imposed; or
(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
that has not been credited against another sentence.

Defendant argues that § 3585(b)(2) is applicable because he was arrested on the 2002 Criminal Misconduct Offense, as well as the outstanding state charges, after the commission of the offense in the instant matter. According to the PSR, defendant became involved in the conspiracy in January 2002, and provided heroin to it on September 8 and October 2, 2002.

the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).  The first tier requires the inmate to report the issue informally to staff, the second tier requires the inmate to file a written remedy request with the Warden, and the third tier requires the inmate to file an appeal with the appropriate Regional Director and then with the General Counsel. *See* 28 C.F.R. §§ 542.13-.15; *Johnson v. Testman*, 380 F.3d, 691, 693 (2d Cir. 2004)(discussing the BOP's administrative remedy system).

Defendant alleges in his March 3, 2008 letter that defendant has exhausted his administrative remedies.  Defendant did write Ms. Macias-Carson, Operations Manger of the Designation and Sentence Computation Center, which at least arguably satisfied the first tier of the hierarchy of remedies.  *See* 28 C.F.R. § 500.1 (defining Warden and Staff); *see also* http://www.bop.gov/about/organization.jsp (last visited May 12, 2008) (Bureau of Prisons organizational chart, listing Regional Directors and General Counsel).  Assuming defendant's letter and Ms. Macias-Carson's response could be interpreted as exhausting the first tier of administrative remedies, there is no indication that defendant appealed this decision to either the Warden,

Regional Director or the General Counsel.[5] As plaintiff has not appropriately exhausted his administrative remedies, this Court cannot intervene. *Unger v. United States*, No. 02 CV 4240 (RJD), 2007 WL 3353515, at *3 (dismissing petition for re-calculation of prior custody credits where petitioner failed to exhaust his administrative remedies); *Jackson v. United States*, No. 06 CV 4863 (SJ), 2007 WL 1875567, at *2 (E.D.N.Y. Jun. 27, 2007) (same).[6]

In any event, under 18 U.S.C. § 3585(b), a defendant may be given credit for time in custody prior to the date his sentence commences only if the prior time in custody "has not been credited against another sentence." 18 U.S.C. § 3585(b). The record clearly demonstrates that New York credited the entire period from his October 2002 arrest until his April 30, 2003 sentencing against defendant's state sentence. Mar. 6, 2007, E. Felicien Letter. Moreover, because defendant was in federal custody pursuant to a writ of habeas corpus *ad prosequendum*, New York retained primary jurisdiction over defendant. *United States v. Wusebio*, No. 04 CR 607, 2007 WL 582745, at *2 (S.D.N.Y. Feb.

---

[5] Defendant argues that it would be futile for him to avail himself of the BOP's administrative remedies. He contends that the January 22, 2008 letter from Ms. Macias-Carson indicates that the BOP has already decided the issue and would not decide it differently upon further administrative review. However, nothing in the letter supports this characterization.

[6] Nor has defendant demonstrated any cause for his failure to exhaust his administrative remedies. *Unger*, 2007 WL 3353515, at *3 (requiring demonstration of legitimate circumstances beyond prisoner's control that preclude him from fully pursuing his administrative remedies to excuse defendant's failure to exhaust his administrative remedies).

21, 2007) (citing *United States v. Smith*, 812 F. Supp. 368, 370-71 (E.D.N.Y.1993)). Accordingly, by the terms of § 3585(b), it may be that no period of the time between October 2002 and February 11, 2004 should have been credited against defendant's federal sentence.[7] To the extent the BOP has made any error, it is to defendant's advantage rather than his disadvantage, by crediting him 148 days.[8] *See Dandridge v. Schultz*, No. 07-CV-1531, 2007 WL 4300846, at *5 (E.D.Pa. Dec. 6, 2007) (BOP did not abuse discretion in taking away time in state custody originally credited to defendant when vacated state sentence was reimposed and prior state custody time was credited by state against reimposed state sentence).

The judgment in the federal case makes clear that defendant's federal sentence was to run concurrently with the unexecuted portion of his state sentence. Accordingly, that defendant's federal sentence was to run concurrently is irrelevant to the question of whether he should receive credit for time spent in state or federal custody prior to imposition of his federal sentence. A court cannot "order the BOP to violate 18 U.S.C. § 3585(b)." *Dent v. Fink*, 408 F. Supp.2d 103, 106

---

[7] The BOP may have originally calculated the 148 days of credit prior to New York's decision to also credit defendant with this period. Since defendant was not returned to state custody until September 2005, New York may not have determined his credits until this time.

[8] For this reason, defendant has failed to demonstrate any prejudice that would excuse his failure to exhaust his administrative remedies. *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).

-10-

(E.D.N.Y. 2006) ("That . . . a concurrent sentence was imposed,
does mean that the prohibition on double credits does not
govern"), amended on other grounds by 2006 WL 1027105 (E.D.N.Y.
Feb 01, 2006), *aff'd* 206 Fed.Appx. 98 (2d Cir. 2006).

Defendant also argues that this Court could grant the relief
requested under U.S.S.G. § 5G1.3(c) and its accompanying
Application Note.[9]  Defendant's argument is unavailing as the
instant proceeding is not a sentencing, re-sentencing or
modification of sentence, to which the advisory Sentencing
Guidelines would apply.

---

[9]  U.S.S.G. § 5G1.3(c) provides:

(Policy Statement) In any other case involving an
undischarged term of imprisonment, the sentence for the instant
offense may be imposed to run concurrently, partially
concurrently, or consecutively to the prior undischarged term of
imprisonment to achieve a reasonable punishment for the instant
offense.

U.S.S.G. § 5G1.3(c), Application Note 3(D) provides:

Complex Situations.--Occasionally, the court may be faced
with a complex case in which a defendant may be subject to
multiple undischarged terms of imprisonment that seemingly call
for the application of different rules. In such a case, the court
may exercise its discretion in accordance with subsection (c) to
fashion a sentence of appropriate length and structure it to run
in any appropriate manner to achieve a reasonable punishment for
the instant offense.

## Conclusion

For the reasons set forth above, defendant's application is denied. The Clerk is directed to transmit a copy of the within to all parties, including defendant via the United States Postal Service.

SO ORDERED.

Dated : Brooklyn, New York
        May 19, 2008

                By:  /s/ Charles P. Sifton (electronically signed)
                     United States District Judge